**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov**

In re:                                                    Case No. 16-12114-RAM

KENDALL LAKE TOWERS                        Chapter 11
CONDOMINIUM ASSOCIATION, INC.,

                    Debtor.

_____/

**CREDITORS' REPLY TO MEMORANDUM IN OPPOSITION TO CREDITORS'
MOTION FOR SUMMARY JUDGMENT ON CLAIMS 7, 9 AND 10(a) AND RESPONSE
TO DEBTOR'S CROSS-MOTION FOR SUMMARY JUDGMENT**

       CMG Condo Fund, LLC, CMG KLT, LLC, and Melanie Salas (collectively, the

"Creditors"), through undersigned counsel, replies and responds (the "Reply") to the Debtor's

*Memorandum in Opposition to Creditor's Motion for Summary Judgment on Claims 7, 9 and 10(a)*

*and Debtor's Cross-Motion for Summary Judgment* (the "Response") [ECF 243].  In support of

this Reply, the Creditors state as follows:

**Introduction**

       The Debtor's challenges to the Creditor's claims both in open court, during discovery, and

in their court filings (including the Response) lack any evidentiary support.  Instead, the Debtor

argues that somehow the equitable doctrine of *in pari delicto* should be a defense to Creditors'

request for summary judgment. However, after countless accusations and attempts to paint the

Creditors as "bad actors," the Debtor's sole support for this defense are the alleged connections

among the Creditors. [ECF 243, pp. 14-15].  Even taking all of the alleged connections as true,

i.e., creditors knowing each other or doing business together, fails to establish that the Creditors

were involved in any sort of wrongdoing that would bar recovery of their claims.

The truth is that the Debtor's board perceived Mr. Lago as a bad actor simply because Mr. Lago's board passed special assessments that certain unit owners opposed. Those opposition owners decided to contest the special assessments by way of a recall action (the "Recall Case").[1] While Judge Dresnick invalidated three of the special assessments in the Recall Case, that decision does not make the unit owners -- who had <u>paid</u> the special assessments when passed -- "bad actors" even if they supported the passing of the assessments.

Instead, the Debtor may be the bad actor in this scenario because it refused to return the special assessments that were paid even though the Debtor has consistently maintained that the assessments do not belong to the Debtor, but instead either belong to the Creditors or the sellers from whom the Creditors purchased their units. [ECF 177, pp. 60 – 62] Indeed, when the sellers did not assert any interests in the assessments, the Debtor issued the credits and therefore confessed judgment in favor of the Creditors. *See, e.g., "Defendant Kendall Lake Towers Condominium Association, Inc.'s and Universal Property Management & Consultants, Inc. Motion to Dismiss Amended Complaint"* (the "Motion to Dismiss") filed in the state court litigation regarding Claim 10(a),[2] which is attached hereto as ***Exhibit 1***. And thus, the Creditors are entitled to summary judgment on their claims.

---

[1] The Recall Case, which has been discussed in many court filings already, began as an arbitration where certain of the Debtor's residents sought to recall the Debtor's board. The arbitration decision supported the recall and the matter was sent to the circuit court where the decision was reviewed *de novo* by Judge Dresnick in the 11th Judicial Circuit in and for Miami Dade County, Florida in a case styled *Kendall Lake Towers Condominium Association, Inc., et al. v. Reynel Rodriguez, et al.*, Case No. 12-39123 CA 01.

[2] *CMG Condo Fund, LLC v. Universal Property Management & Consultant, Inc. et al.*, Case No. 13-14280-CA-20.

## Argument

### A. *Confession of Judgment*

This Court should grant the Creditors' motions for summary judgment [ECF 175, 176 and 177] based on the Debtor's confession of judgment because the Debtor cannot dispute that the credits were given and, while the Debtor claims that "[t]he [Debtor] has no records of giving these credits," the Debtor's attorney admitted in Court at the June 8 hearings that the credits were given and thus the Lawsuits were "moot."

The Debtor devotes 8 lines from a 20-page Memorandum addressing the confession of judgment. The Debtor argues that the Debtor did not confess judgment based solely on the fact that "there is no document which evidences how the Association gave this credit. There is an issue of material fact as to how these credits magically appeared on the ledgers of these unit owners." [ECF 243, p. 15]. In other words, the Debtor does not dispute the validity of the Creditors' argument, but simply claims that there is an issue of fact as to the confession. Because the Debtor has filed pleadings with the State Court admitting to the issuance of the credit in an attempt to moot the litigation, this Court should grant judgment on claims 7, 9 and 10(a) in the Creditors' favor as a matter of law.

> i.     *The Debtor Failed to Contest the Validity of The Debtor's Ledgers Showing the Credit - "How" the Debtor Gave the Credit is Irrelevant*

The Debtor's Response incorrectly suggests that there is an issue of fact as to the confession of judgment because the Debtor does not understand why or how the Debtor issued the credit. There is no requirement in the law, and the Debtor cites to no such requirement, that there is an understood "reason" for a fact to be material and undisputed. The Debtor does not, and cannot, dispute the validity and legitimacy of the ledgers attached to the Creditors' Motion. The Debtor does not claim that they are false or altered. Accordingly, the Debtor's claim that it does not know

"how" the credits were given works as an admission that the credits exist and do not raise to the level of creating an issue of fact. Thus, this Court should grant Summary Judgment in the Creditors' favor because the Debtor acknowledges that the credits were given and thus judgment was confessed.

      *ii.*      *The Debtor Admitted on February 3, 2016 that the Credits Were Issued*

While the Debtor claims that it does not know how the credits were issued to the Creditors, a careful review of the record in State Court reveals that the Debtor issued the credits in an attempt to moot the litigation, similar to the association's efforts in *51 Island Way Condominium Ass'n., Inc. v Williams*, 458 So. 2d 364 (Fla. 2d DCA 1984). Specifically, on February 3, 2016, the Debtor filed the Motion to Dismiss where the Debtor attached a ledger dated February 2, 2016, correctly reflecting the credits. *See **Exhibit 1***. Based on the ledger attached to the Debtor's Motion to Dismiss, the Debtor requested that the case be dismissed as moot. *See **Exhibit 1***. As explained in *51 Island Way*, voluntary compliance with the demands of a plaintiff following the filing of a lawsuit does not moot the case, but operates as a confession of judgment, which requires the formalization of such confession and the award of prevailing party attorneys' fees and costs. 458 So.2d at 365-66. *See also Do v. GEICO Gen. Ins. Co.,* 137 So. 3d 1039, 1043 (Fla. 3d DCA 2014). Accordingly, this Court should grant the Creditors' Motion for Summary Judgment on claims 7, 9 and 10(a).

      **B. Res Judicata**

Res Judicata does not bar the Creditors' claims because there never was a decision on the merits concerning the reimbursements, and in any case the Debtor confessed judgment prior to raising its res judicata argument.

       i.       *The Debtor Confessed Judgment When the State Court Cases Were Pending*

As explained above, the Debtor confessed judgment while the state court lawsuits seeking reimbursement of the special assessments were still pending.  The Debtor cannot now re-open the merits of the case to make an after-the-fact argument of *res judicata*. Indeed, the Debtor does not even address this point because it simply goes on to say that (a) the Debtor does not know how the Debtor gave credits to the Creditor, and (b) in any case the Debtor maintains it now wants to take the credits away. Because the first argument is irrelevant and the second argument - taking the credits away - would be a change in circumstances sufficient to require a new action (which is time barred under this Court's scheduling order), the *res judicata* argument must fail.

       ii.      *Res Judicata Does Not Bar the Creditors' Claims Because the Decision as*
                    *to Standing Did Not Involve the Merits*

Even if the Debtor were permitted to argue *res judicata*, the argument would fail.  The Debtor is attempting to base its entire *res judicata* argument on an April 2013 order entered by Judge Dresnick in the Recall Case.  [ECF 243, pp. 5-6, 14]  However, that order simply established that the Creditors did not have <u>standing</u> to seek the reimbursement of the assessments they paid <u>in the Recall Case</u>.

To be clear, the Recall Case was filed to deal exclusively with the recall election of the board of directors of the Debtor. Because the validity of the special assessments was a key factor in the recall, the Judge Dresnick conducted a hearing on the special assessments and invalidated them.  Several parties requested that they reimbursed for the special assessments they paid, and Judge Dresnick authorized some reimbursements, but deferred on others so all interested parties could be heard.

And in this way (and through its affidavits), the Debtor is mis-construing the order in the Recall Case by claiming that lack of standing in one case somehow bars the Creditors'

reimbursement claims in another case.  Again, there was no determination made in the Recall Case concerning the merits of the reimbursements.  Judge Dresnick's ruling did nothing more than require the Creditors to bring their reimbursement claims in actions separate and distinct from the Recall Case.  *See Affidavit of Ross Kulberg, Esq. attached hereto as **Exhibit 2***.

Even assuming for sake of argument that this Court found that the reimbursement claims were barred by the doctrine of *res judicata*, the Debtor actually issued the credits that the Creditors were seeking and now appears to suggesting that it wishes to reverse those credits. Of course, this is a change in circumstances such that any identity of issues, required under *res judicata*, would be lost.  See *Couch Const. Co. for Use & Benefit of Kimmins Corp., Inc. v. Florida Dept. of Transp.*, 537 So. 2d 631, 632 (Fla. 1st DCA 1988) (reasoning that "[w]hen conditions intervene before the second suit so as to create a new basis of claims and defenses, res judicata will not apply").

### C.    Discovery

The Debtor alleges that summary judgment is not appropriate when discovery remains outstanding.  No timely discovery requests are pending in this case.  According to this Court's "*Amended Order Setting Litigation Schedule on Objections to Claims 7, 8, 9, 10, 11, and 12*" (the "Scheduling Order") [ECF 121], the deadline to complete, not issue, discovery on claims 7, 9, and 10(a) expired on April 28, 2017.  "Completion of discovery means that the responses and any related discovery disputes must be resolved by the deadline as well." *In re Skyport Global Communications, Inc.*, 408 B.R. 687, 692 (Bankr. S.D. Tex. 2009) (quoting Front-Line Promotions & Mktg., Inc. v. Mayweather Promotions, LLC, 2009 WL 928568, *4 (E.D. La. April 2, 2009)). Here, the Debtor did not issue its written discovery until a few days before discovery was required to be completed. Given the fact that that the Claim Objections were filed in June 2016 (more than

a year ago), given the Scheduling Order was entered in March 2017 (almost four months ago), and given that the Scheduling Order adopted a schedule agreed to by the parties (and not independently set by this Court), the Debtor had more than ample notice and opportunity to serve discovery in a timely manner. This is especially true where the pre-petition litigation (and related discovery) underlying the claims were pending several years prior to the Debtor seeking bankruptcy protection. Accordingly, the Debtor's discovery was not issued timely and is not a basis to withhold entry of summary judgment.

### Conclusion

The undisputed facts show that the Creditors were issued credits by the Debtor, which, under Florida law, is the equivalent of a confession of judgment. Accordingly, the Creditors are prevailing parties entitled to an award of their attorneys' fees and costs. Therefore, Claims 7, 9 and 10(a) should be allowed and the Debtor's objections to the claims should be overruled.

WHEREFORE, the Creditors respectfully request entry of an order (a) granting the Creditors' Motions for Summary Judgment [ECF 175, 176 and 177], (b) overruling the Debtor's objection to the Claims, (c) denying the Debtor's Cross-Motion for Summary Judgment [ECF 243], (d) allowing the Claims, and (e) granting such other and further relief as this Court deems appropriate.

Dated July 5, 2017

**MARKOWITZ, RINGEL, TRUSTY & HARTOG, P.A.**
*Bankruptcy Counsel for Creditors*
101 NE Third Ave., Suite 1210
Fort Lauderdale, FL 33301
Telephone: (954) 767-0030
Facsimile:  (954) 767-0035

By: ___ */ s/ Ross R. Hartog* _____
　　　ROSS R. HARTOG
　　　Fla. Bar No. 272360
　　　Email:  rhartog@mrthlaw.com

and

**LAW OFFICES OF PATRICK H. GONYEA, P.A.**
*Litigation Counsel for Creditors*
4257 N.W. 76th Avenue
Davie, Florida 33024
Telephone: (954) 540-2387
Facsimile:  (954) 989-3432

By:    */ s/ Patrick H. Gonyea*
        PATRICK H. GONYEA
        Fla. Bar No. 0055042
        Email:  pgonyealaw@gmail.com

# **EXHIBIT 1**

Motion to Dismiss

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CMG KLT, LLC

                 Plaintiff,

Vs.

KENDALL LAKE TOWERS
CONDOMINIUM ASSOCIATION, INC., et al.,

                 Defendants.

_____/

**CIVIL DIVISION**

**CASE NO. 2013-14295-CA-20**

### DEFENDANT KENDALL LAKE TOWERS CONDOMINIUM ASSOCIATION, INC.'S AND UNIVERSAL PROPERTY MANAGEMENT & CONSULTANTS, INC. MOTION TO DISMISS AMENDED COMPLAINT

Defendants, KENDALL LAKE TOWERS CONDOMINIUM ASSOCIATION, INC., ("KLT") and UNIVERSAL PROPERTY MANAGEMENT & CONSULTANTS, INC., ("UPM") by and through its undersigned counsel, hereby files this Motion to Dismiss Complaint for mootness, or in the alternative, for failure to attach necessary documents or exhibits and failure to plead a cause of action upon which relief can be granted pursuant to Florida Rules of Civil Procedure §§ 1.130 and 1.140, and in support thereof states as follows:

1. On or about October 8, 2015, Plaintiff, CMG KLT LLC ("Plaintiff' or "CMG") filed its Amended Complaint against the Defendants.

2. Plaintiff brought this action based on its ownership of a unit in the Defendant Association, located at 15221 SW 80th Street, #113 ("Unit 21-113")

3. This Court should dismiss the Plaintiff's Amended Complaint pursuant to Fla. R. Civ. P. 1.140(b)(6) for failure to state a claim upon which relief can be granted and on Fla. R. Civ. P. 1.130(a) for failure to attach necessary documents or exhibits.

.

4.  In considering the validity of the Plaintiffs' Complaint, upon a filing of a Motion to Dismiss for failure to state a cause of action, the court must "confine strictly to the allegations within the four corners of the complaint."  <u>Pizzi v. Central Bank & Trust Company</u>, 250 So. 2d 895, 897 (Fla. 1971); <u>Airport Sign Corp. v. Dade County</u>, 400 So. 2d 828 (Fla. 3d DCA 1981).

5.  The Complaint alleges five counts collectively against the Defendants KLT and UPM.

6.  Counts I and II are against KLT for conversion and unjust enrichment, respectively, of $8,117.03 of allegedly unreimbursed Special Assessment payments that were made by the Plaintiff to the Defendant KLT.

7.  Count III against UPM for an alleged violation of the Florida Debt Collector Statute, Fla. Stat. 559.72.

8.  Count IV against KLT for Breach of Contract is based on alleged failures to maintain the common elements of the Association.

9.  Count V (mislabeled as Count VI in the Plaintiff's pleading) against all Defendants for a Declaratory Action asking that the Court declare that Plaintiff, and not the Prior Owners of Unit 21-113 are entitled to the reimbursement of the Special Assessments.

10. As to Counts I and II, the claimed Special Assessments were invalidated by this Court pursuant to a separate action (*see* case 2012-39123, KLT v. Rodriguez, et. al.) via an Order entered on March 11, 2013.  A copy of the Order is hereby attached as Exhibit "A".

11. Plaintiff has made no showing or offered any proof as to Counts I, II, and V documenting that it paid the claimed amounts for the Special Assessment on Unit 21-113 that was subsequently invalidated pursuant to the Court's March 2013 Order.  A copy of the relevant Unit ledgers are hereby attached as Exhibit "B".

2

12. Counts III and IV should also be dismissed under Fla. R. Civ. P. 1.130(a) for failure to attach any corroborating documentation necessary to support its claims.

13. Plaintiff makes claims under Count III against Defendant UPM for an alleged violation of the Florida Debt Collector Statute yet offers no documentation or proof other than an unfounded allegation that "UNIVERSAL knew or should have known that the debt it was attempting to enforce was not legitimate." (Amended Complaint, para. 33).   Plaintiff offers no written document or exhibit demonstrating exactly how the Defendant violated the Plaintiff's rights under the Statute.

14. Likewise, under Count IV, the Plaintiff makes claims against the Defendant KLT for failure to maintain the common elements, alleging that "the buildings in which the Condo Units are located have been declared "Unsafe Buildings" unfit for occupancy"  Amended Complaint, para. 37.  Again, Plaintiff offers no documents corroborating its assertions.

15. Florida courts have found that "where a complaint is based on a written instrument, "the complaint does not state a cause of action until the instrument or an adequate portion thereof is attached or incorporated in the complaint."   Samuels v. King Motor Co., 782 So. 2d 489 (Fla. 4th DCA 2001) (*quoting* Safeco Ins. Co v. Ware, 401 So. 2d 1129, 1130 (Fla. 4th DCA 1981).

16. Additionally, is the "responsibility of the Plaintiff to provide to the court any documents upon which his alleged cause of action is based."  Winn-Dixie Stores, Inc. v. Sams, 281 So. 2d 47, 48 (Fla. 1973).

17. Due to the Plaintiff's failure to attach any corroborating documents or exhibits in support of any of its Counts, the Plaintiff's complaint must be dismissed as a matter of law for failure to state a cause of action under Fla. R. Civ. P. 1.140(b)(6) for Counts I, II, and V and under 1.130(a) for all Counts.

3

WHEREFORE, Defendants KENDALL LAKE TOWERS CONDOMINIUM ASSOCIATION INC. and UNIVERSAL PROPERTY MANAGEMENT & CONSULTANTS, INC. respectfully requests this Court Dismiss Plaintiff's Complaint, award Defendant's attorney's fees and costs in defending this action, and to award any further relief this Court deems just and proper.

Respectfully Submitted,

s/ Santiago J. Muiños

By: _____

**SANTIAGO J. MUIÑOS**
FBN: 711241

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic mail this 3rd day of February, 2016, to the persons on the attached service list.

Counsel for Plaintiff          Patrick Gonyea, Esq.
                               4257 NW 76th Avenue
                               Davie, Florida 33024
                               Email: pgonyealaw@gmail.com
                               Phone: (954) 540-2387
                               Fax: (954) 613-5464


s/ Santiago J. Muiños

By: _____

**SANTIAGO J. MUIÑOS**
FBN: 711241
*Attorney for Defendant Kendall Lake Towers Condominium Association, Inc. and Universal Property Management & Consultants, Inc.*

MUIÑOS & MORALES P.L.
300 Sevilla Avenue, Suite 309
Coral Gables, Florida 33134
sjmservice@msquaredlaw.com

T: 305.403.0641
F: 305.403.2099

4

# EXHIBIT "A"

*10*
*ORDR*

**IN THE CIRCUIT COURT OF THE 11ᵗʰ JUDICIAL CIRCUIT IN AND FOR**
**MIAMI-DADE COUNTY, FLORIDA**

**CASE NO. : 12-39123 CA 01 (20)**

**KENDALL LAKE TOWERS CONDO**
**ASSOCIATION INC.; JULIO LAGO;**
**ANTHONY CECCHINI; and**
**MARIA ELENA ARTECHE:**
       **Plaintiffs,**

vs.

**REYNAL RODRIGUEZ; ORLANDO**
**GONZALEZ; AND KENDRY SANCHEZ:**
       **Defendants,**
_____/

**ORDER**

THIS CAUSE having come before the Court for evidentiary hearing on January 18, 2013 and continued on January 22, 2013 on the Plaintiffs' Emergency Motion To Compel Enforcement Of Court Order And Sanctions. Present for the hearing were counsel for the Plaintiffs and the Defendants, the Receiver previously appointed by this Court on October 26, 2012 and the Receiver's counsel. The Court having reviewed the pleadings and submissions of the Plaintiffs and the Defendants and after hearing the testimony of numerous fact witnesses, and reviewing admitted documents, and having reviewed the Court file of this and cases related to the issues presented to the Court and the Court being otherwise fully advised in the premises hereby makes the following findings of fact and conclusions of law.

Background:

This matter is before the Court for a trial *de novo* pursuant to F. S. § 718.1255. These proceedings originated and stemmed from a majority of unit owners at the Kendall Lake Towers Condominium voting to recall the Board of Directors o f the Kendall Lake Towers Condo Association, Inc. (hereinafter "KLT"), and install a new board. The prior and removed Board, who are the Plaintiffs Julio Lago, Anthony Cecchini, and Maria Elena Arteche in this case, initiated the instant action under F. S. § 718.1255 after the statutory arbitration resulted in the removal of the Plaintiffs as Board of Directors for KLT, and the instant appointment of the Defendants Reynal Rodriguez, Orlando Gonzalez, and Kendry Sanchez as the newly elected Board .

When this matter first came to the Court's attention on October 26, 2012, counsel for the Defendants made allegations of impropriety by the prior board both as to the finances and in the

1

conduct of the elections which had been scheduled for December of 2012. In response to these allegations and to protect the unit owners of the Kendall Lake Towers Condominium, this Court with the agreement of both sides appointed Richard Baron, Esq., as Receiver to take control of the bank accounts of the Kendall Lake Towers Condo Association, Inc., (hereinafter "Condo Association") as well as to control and oversee the elections. In addition, based upon Plaintiff's counsel representing to the Court that construction permits had already been obtained and that construction was initiated,[1] the Court reinstated the three (3) Special Assessments, the last two of which were to pay for a construction project, and ordered them to be enforced by the Receiver.

This Court latter, in response to the Receiver's motion allowed the Receiver to conduct discovery as any other party to this litigation.

The instant hearing motion on which this Order is issued arises from demands by the Plaintiff made upon the Receiver and this Court to make the following rulings:

(1) Requiring R eceiver to comply with this Court's order and collect ALL THREE Special Assessments (April 26, 2011, January 16, 2012, and April 18, 2012) validly passed by the previous Board of Directors;

(2) Declaring all candidates delinquent in their assessments (including all THREE Special Assessments) ineligible to be candidates for the Board pursuant to Florida Statutes, Section 718.112(2)(d)(2);

(3) Requiring the Receiver to fulfill his Court Ordered responsibility to oversee the elections without the involvement or interference of the illegal Board or its newly hired management company;

(4) Requiring Receiver to pay all outstanding Association invoices; and

(5) Imposing sanctions against the Receiver, for any further violation of this Court's Order.

The parties acknowledged that the issues presented in demands (1) (2)and (3) were the priority because of the special elections which had been scheduled and that demands (4) and (5) were not necessarily to be  addressed at the hearing. The Defendants position was that demand (1) – requiring the Receiver to collect all prior special assessments – was moot since the new board filed of record board meeting minutes reflecting the board's decision at a duly noticed Board meeting to postpone the collection of the special assessments. The Plaintiff's position was that no acts taken by the new board (Defendants) should count because the new board members could not be on the board in the first place since the three members of the new board were delinquent in the payment of the special assessments and ineligible under F. S. § 718.112(2)(d)(2).   Additionally, under F. S. § 718.112(n), the Plaintiffs argued that the

---

[1] The Court latter determined at the hearing on January 18 and 22, 2013 that these representations were false.

2

Defendants could not be members of the Board of the Association because they are all more than 90 days delinquent in the payment of their monetary obligations due the Association and are deemed to have abandoned the office, creating a vacancy to be filled according to law. The Defendants asserted that there was actual fraud in the imposition of the special assessments, that no or improper notice of the special assessments were made and that the special assessments were invalid and should be set aside which ruling would result in the new board not being disqualified under F. S. § 718.112(2)(d)(2). The reason this matter was an emergency was the Plaintiff's position that the new board's members were delinquent in paying the special assessments and if so were ineligible to sit on the board or to run in the election which was set to be held on February 11, 2013. The only issue heard and addressed at the evidentiary hearing was the validity of the special assessments imposed by the prior board.

## SPECIAL ASSEMENTS

There were three special assessments imposed by the prior board which the Plaintiffs asserted were necessary for among other things, critical repairs to the KLT complex. The first special assessment was purportedly passed on April 26, 2011 in the amount of $187,000.00 (this special assessment was for replacement of camera surveillance equipment and re-asphalting of the parking lot). The second special assessment was passed on January 16, 2012 in the amount of $1,900,000.00 and a third special assessment was enacted on April 18, 2012 in the amount of $2,300,000.00. The Plaintiffs contend that all three special assessments were properly noticed and properly assessed. The Defendants asserted that there was neither notice nor discussion of the April 26, 2011 special assessment at the meeting held on that assessment; that the second assessment of January 16, 2012 in the amount of $1,900,000.00 was never noticed at all and that at the meeting there was no resolution on a special assessment. [2] As to the third special assessment of April 18, 2012 in the amount of in $2,300,000.00, the Defendants assert that the meeting was improperly noticed and the assessment was fraudulently passed because the notice for that meeting indicated that it was for $4,200,000.00 which included the April 18, 2012 special assessment of $1,900,000.00 which was never passed in the first place and fraudulently imposed behind closed doors without notice or a vote. The Defendants argue that the special assessments were not in the homeowner's best interest and point to the fact that shortly after the imposition of the third special assessment (April 18, 2012) a contract to conduct repairs to the

---

[2] The defendants' witnesses testified that a special assessment was mentioned in general terms as a future possibility. They were very clear that there was neither a discussion, motion nor resolution regarding a present special assessment.

3

buildings between the Condominium Association and contractor APC Engineering, Inc., was signed on June 4, 2012. On the same date, APC Engineering, Inc. entered into an agreement to pay Preferred Alliance Group, LLC the sum of $375,000.00 for acting as the "Customer's Representative" with regard to the repairs of the building. Preferred Alliance Group was paid $343,000.00 by the board controlled by the plaintiffs.

The Defendants requested that this Court exercise its broad powers in equity to invalidate the special assessments, one of the effects of which order would be to allow those new board members to continue to sit and to be eligible in the upcoming election.

The Plaintiffs contend that all three special assessments were properly noticed, voted on by the Board and all three were valid. Therefore, the Plaintiffs contend that the new Board of Directors are ineligible to act as Board members because they were delinquent in paying all or some of the special assessments and those who have not paid will be inellagable to run in the upcoming election.

The Law:

The rights, duties and obligations of a condo owner and the condo board are determined by statute and the declaration of condominium. A declaration of condominium possesses attributes of a covenant running with the land and operates as a contract among unit owners and the association, spelling out mutual rights and obligations of the parties thereto. *Cohn v. Grand Condominium Ass'n, Inc.*, 62 So. 3d 1120 (Fla. 2011). As in any contract, there is the implied covenant of good faith and fair dealing. *QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*, 94 So.3d 541(Fla. 2012).

The Plaintiffs have argued that unit owners are required to abide by the actions of the prior board and that the only recourse is a separate action for breach of fiduciary duty. The Plaintiffs cite *Coral Way Condominium Investments, Inc. v. 21/22 Condominium Association, Inc.,* 66 So.3d 1038 (Fla. 3rd DCA 2011) for this proposition. The Plaintiffs argue that since the special assessments were validly passed by the Board, members who are delinquent in the payment of such assessments in excess of 90 days cannot serve on the Board. They further argue that the new Board can not reverse the assessment in an attempt to make themselves no longer delinquent. Plaintiffs cite to *Coral Way which s*tates:

> "Furthermore, it is undisputed that the special assessment was passed in the manner required by the Condominium's bylaws. A special meeting was called by the Association and appropriate notice of the meeting was sent to Coral Way. At the special meeting a

4

quorum was present and the special assessment was passed by a majority of those present.

Coral Way does not dispute the foregoing facts. Rather, Coral Way contends that the special assessment would *1041 not have been necessary were it not for the Association's alleged breach of fiduciary duty, which Coral Way argues depleted the Association's funds. Avoidance of the payment of a valid assessment, however, is *not* a remedy available to unit owners to cure unauthorized acts by officers or directors of an association. *Ocean Trail Unit Owners Ass'n v. Mead,* 650 So.2d 4, 7 (Fla.1994). "[I]f the officers or directors of an association act in an unauthorized manner, the unit owners should seek a remedy through elections or, if factually supported, in an action for breach of fiduciary duty." *Id.* Thus, while Coral Way's allegations relating to improper payments made by the Association are the proper subject of an independent, affirmative claim for breach of fiduciary duty against the Association, those allegations are not a valid defense or avoidance to payment of the special assessment." 66 So.3d 1038 * 1040-1041

The assessments in *Coral Way* were **properly** passed. Here, the allegations and evidence supports that they were not. Further, if the special assessments were not valid in the first place, then no unit owner could be deemed delinquent and ineligible for a seat on the board under F. S. § 718.112(2)(d)(2). The Supreme Court in *Ocean Trail* stated that the remedy of a homeowner for the unauthorized acts of a board is through the use of *elections or an independent claim for breach of fiduciary duty*.

This Court's power in equity is broad. Equity will not suffer a wrong without a remedy. *First State Bank of Clermont v. Fitch*, 105 Fla. 435, 141 So. 299 (1932). Equity seeks justice rather than technicality, truth rather than evasion, and common sense rather than quibbling. *Coleman v. Coleman*, 191 So. 2d 460 (Fla. Dist. Ct. App. 1st Dist. 1966). Further, F. S. § 718.303 of the Condominium Act specifically authorizes injunctive relief as stated in *Hobbs v. Weinkauf* 940 So.2d 1151 (Fla. 2nd DCA 2006):

"A violation of the requirements of chapter 718 is itself a harm for which section 718.303 authorizes injunctive relief. The statute requires no additional showing of harm. *See Times Publ'g Co. v. Williams,* 222 So.2d 470, 476 (Fla. 2d DCA 1969) (holding that statutory provision granting circuit court jurisdiction to issue injunction for violation of a statute "is the equivalent of a legislative declaration that a violation of the statutory mandate constitutes an irreparable public injury" and, therefore, "a mere showing that the statute has been or is clearly about to be violated fully satisfies" the requirement of a showing of irreparable harm for injunctive relief) *disapproved on other grounds by Neu v. Miami Herald Publ'g Co.,* 462 So.2d 821 (Fla.1985))."

See also *Mitchell v. Beach Club of Hallandale Condominium Ass'n, Inc.,* 17 So.3d 1265 (Fla. 4th DCA 2006).

5

The Hearing--Findings of Fact and Conclusions of law:

1. The Plaintiffs called the following witnesses:

    a. Julio Lago, former President of the Condominium Association and who was ousted by the recall. He testified that he was present at the three Association Board meetings which approved the special assessments and that special Assessments were voted unanimously at each of the meetings. He testified that the notices for each of those meetings referenced the special assessments and that all such notices were mailed to all Unit Owners pursuant to Chapter 718, Florida Statutes. He testified that the building was in imminent danger of collapse or failure due to the water damage from past hurricanes. He admitted that the president of APC Engineering is David DiPuglia who sits on other boards with him and is a close associate of his brother, Juan Carlos Lago. He further admitted that the contract between the Association (entered into while he was president) and APC Engineering had a provision that there would be a payment of $374,000 to Preferred Alliance Group, LLC – a company that was established and managed by him until approximately 1 year before the contract was executed and which company was still administered by his wife who still writes checks for the company (Preferred Alliance). Additionally, the contract between APC Engineering and the association listed Juan Carlos Lago as the "representative" of the Association for the purposes of the contract. All of the funds paid to APC Engineering up and including the time of the hearing were paid to Preferred Alliance by APC Engineering (since the sum was less than the $374,000 agreed to be paid).

    b. Maria Elena Arteche, a former member of the Board of Directors of the Condominium Association and who was ousted by the recall, testified that she was present at all three special assessment meetings which approved the special assessments and the special assessments were voted unanimously at each of the meetings and that all such notices were mailed to all Unit Owners pursuant to Chapter 718, Florida Statutes.  Ms. Arteche, when asked in cross examination if she was the mother in law of Danay Bazain, an employee of the management company employed by the prior Board. She emphatically denied this, however on further cross examination, she revealed that Danay Bazain was her sister-in-law. She had been employed by the Association as a security guard, but lost her job when the new board took over.

    c. Anthony Cecchini, also a member of the former Board of Directors of the Condominium Association who was ousted by the recall, testified as did the other Board member/plaintiffs that he was present at the duly noticed meeting

6

where the three special assessments were unanimously approved and that all such notices were mailed to all Unit Owners pursuant to Chapter 718, Florida Statutes. He also testified that he sat on three (3) other condominiums Boards of Directors with Julio Lago, and disputed sitting on a condominium Board with David DiPuglia.

2. The Defendants called the following witnesses that testified as follows:

   a. Reynal Rodriguez is a current member of the new Board of Directors of the Condo Association, and was involved with the recall vote. Mr. Rodriguez testified that he was not present at the April 26, 2011 meeting for the First Special Assessment (as he was out of town on that day) when the Plaintiffs claim that the Board of Directors voted a special assessment. He was at the January 16th 2012 meeting and testified that there was no discussion of a special assessment other than by Julio Lago, the then president of the Association, who stated generally that there will be a need for a special assessment in the future. Mr. Rodriquez produced notices for the April 26, 2011 and January 16, 2012 meetings sent out by the Association calling for an annual meeting and for a vote on the budget. These notices contained no notice of a special assessment. The Plaintiffs provided the court with another notice, dated a day before the notice produced by Mr. Rodriguez, indicating a special Assessment meeting for January 16, 2012, but Mr. Rodriguez said he never received it. Mr. Rodriguez further testified that he was present at the April 18' 2012 meeting where the plaintiffs claim a $4.2 Million Dollar Assessment was approved. Mr. Rodriguez testified that the notice he received for the April 18, 2012 Special Assessment meeting referenced the assessment supposedly passed in January, but he was present in January and no such assessment was passed by the Board of Directors.

   b. Angela Rojas is a former unit owner, who testified that she was present at the April 26, 2011 meeting when the plaintiffs claim that the Board of Directors voted a special assessment and that there was no discussion of a special assessment at that meeting. Ms. Rojas also testified that she was at the January 16, 2012 meeting and again testified that there was no

7

discussion of a special assessment. She produced notices for the April 26, 2011 and January 16, 2012 meeting sent out by the Association calling for an annual meeting and for a vote on the budget, but no notice of a special assessment was contained on the notices she received. Ms. Rojas further testified that she was present at the April 18, 2012 meeting where the Plaintiffs claim a $4.2 million dollar assessment was approved, but the notice only provided for a $2.3 million dollar special assessment.

c. Carmen Davalos, a unit owner, testified that she did not receive the notice of special assessment for January and April, 2012, was present at all three meetings, and the issue of a special assessment was never formally discussed at the January 16, 2012 meeting. She further testified that Julio Lago informally stated that there could be a special assessment coming up in the January 16, 2012 meeting. Ms. Rojas testified that she was forced to sell her unit due to the special assessments only and not because she was behind on her mortgage. The evidence later showed that there was in fact a foreclosure action filed by the first Mortgagee on Ms. Rojas' unit.

d. Don Hodges, Professional Engineer, testified that the structure of the building was sound, contrary to allegations of imminent collapse of the walls of the buildings made by Mr. Lago and the Plaintiffs' lawyer in an email to the Receiver.

e. Vinson Richter, a contractor for 30 years testified that he has been involved in hundreds of contracts in his years as a contractor and the contract between the Condo Association and APC Engineering Group was highly irregular in that the "Customer's Representative" identified as J.C Lago, the brother of Julio Lago, the then president of the Association, was paid by the contractor, which created a severe conflict of interest. He further testified that a contract for the magnitude of work to be performed would best serve the unit owners if it were a "cost-plus" contract. He also testified that the amount of the contract for the repair work signed by the first Board was exorbitant.

3. This Court **finds** that the statutory notice of the April 26, 2011 and January 16, 2012 board meeting that was actually sent to the unit owners did not contain any reference to a

8

special assessment and that no motion or resolution was made regarding such an assessment at either Board meeting. The Court notes that only 12 unit owners appeared at the April 26, 2011 Board meeting and 17 unit owners appeared at the January 16, 2012 Board meeting and finds that if the proper notice actually noticing a special assessment of $187,000.00 and 1,900,000.00 respectively was in fact sent to the unit owners that far more people would have attended the meetings as more than 80 unit owners appeared at the meeting where there was notice of a special assessment on April 18, 2012.

4. This Court **finds** that the topic of a future special assessment was presented to the unit owners only informally and casually and that no action was taken at the January 16, 2012 board meeting in that regard.

5. This Court **finds** that the imposition of the special assessment of $1,900,000.00 was improper under Florida statutes.

6. This Court **finds** that the statutory notice of the April 18, 2012 board meeting that was actually sent to the unit owners did contain a notice of a special assessment, but improperly and incorrectly advised the unit owners that the prior special assessment of $1,900,000.00 had already passed. This Court notes that over 80 unit owners appeared at that meeting. The fact that the board found it necessary to have the police present for this meeting – and at no prior meeting – is telling. Notwithstanding the fact that the board passed what the Plaintiffs assert was a $2,300,000.00 special assessment on that date, the special assessment notice for that meeting indicated, wrongly that $1,900,000.00 was previously passed. As such, any special assessment imposed at the April 18, 2012 board meeting was not properly passed and was improper under Florida statutes.

Based upon the foregoing findings of fact and conclusions of law it is hereby ORDERED and ADJUDGED:

1. The purported special assessment of April 26, 2011 in the amount of $187,000.00 is hereby set aside and vacated in all respects.

2. The purported special assessment of January 16, 2012 in the amount of $1,900,000.00 is hereby set aside and vacated in all respects.

3. The purported special assessment of April 18, 2012 (which referenced the January 16, 2012 special assessment of $1,900,000.00, now vacated) in the amount of $2,300,000.00

9

is hereby set aside and vacated in all respects.

4. This Court reserves jurisdiction to enforce this order as required.

DONE AND ORDERED IN MIAMI-DADE COUNTY THIS THE ___8___ DAY OF March, 2013.

Ronald Dresnick
Circuit Court Judge

Ronald Dresnick, Circuit Court Judge

Copies to:    Jerrell Breslin, Esq., Baron, Breslin & Sarmiento, 501 Northeast 1st Avenue, Suite 201, Miami, Florida 33132, Alberto N. Moris, P.A., 8700 West Flagler Street Suite 120 Miami, Florida 33174; Darrin Gursky, Esq., GURSKY RAGAN P.A., 14 NE 1st Avenue, 2nd Floor, Miami, Florida 33132; and First Condo Management, LLC; Serve Managing Member Silvia Rodriguez, 10820 SW 200 Drive, Cutler Bay FL 3315; Rodolfo Nunez, Esq., Aran, Correa, Guarch & Shapiro, P.A., 255 University Drive, Coral Gables, Florida 33134; Richard Baron, Esq., Baron, Breslin & Sarmiento, 501 Northeast 1st Avenue, Suite 201, Miami, Florida 33132,

10

# EXHIBIT "B"

Kendall Lake Towers Condo Association, Inc. 2013

15221 SW 80th Street
Suite 102
Miami, Fl. 33193

# Statement

| Date |
|------|
| 2/2/2016 |

| To: |
|-----|
| 21-113<br>C M G CONDO FUND LLC<br>4141 NE 2ND AVE<br>SUITE 204A<br>MIAMI, FLORIDA 33137 |

| Amount Due | Amount Enc. |
|------------|-------------|
| $11,768.39 | |

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 12/31/2011 | Balance forward | | 0.00 |
| 10/01/2012 | INV #1296. | 243.20 | 243.20 |
| | --- Maintenance Fees, 1 @ $243.20 = 243.20 | | |
| 10/03/2012 | INV #1124. | 16.50 | 259.70 |
| | --- Water Charges, 1 @ $16.50 = 16.50 | | |
| 10/05/2012 | PMT #1008. | -243.20 | 16.50 |
| 10/15/2012 | INV #1361. | 624.39 | 640.89 |
| | --- Special Assessment # 3, 1 @ $624.39 = 624.39 | | |
| 11/01/2012 | INV #1550. | 243.20 | 884.09 |
| | --- Maintenance Fees, 1 @ $243.20 = 243.20 | | |
| 11/05/2012 | INV #1224. | 14.60 | 898.69 |
| | --- Water Charges, 1 @ $14.60 = 14.60 | | |
| 11/15/2012 | INV #1362. | 624.39 | 1,523.08 |
| | --- Special Assessment # 3, 1 @ $624.39 = 624.39 | | |
| 11/19/2012 | PMT #1851300711. | -16.50 | 1,506.58 |
| 12/01/2012 | INV #232. | 243.20 | 1,749.78 |
| | --- Maintenance Fees, 1 @ $243.20 = 243.20 | | |
| 12/10/2012 | INV #1190. | 18.76 | 1,768.54 |
| | --- Water Charges, 1 @ $18.76 = 18.76 | | |
| 12/15/2012 | INV #1363. | 624.39 | 2,392.93 |
| | --- Special Assessment # 3, 1 @ $624.39 = 624.39 | | |
| 12/19/2012 | PMT #1017. | -243.20 | 2,149.73 |
| 12/19/2012 | PMT #1019. | -243.20 | 1,906.53 |
| 12/19/2012 | PMT #1851300938. | -14.50 | 1,892.03 |
| 01/01/2013 | INV #527. | 240.20 | 2,132.23 |
| | --- Maintenance Fees, 1 @ $240.20 = 240.20 | | |
| 01/04/2013 | INV #1097. | 15.74 | 2,147.97 |
| | --- Water Charges, 1 @ $15.74 = 15.74 | | |
| 01/15/2013 | INV #1364. | 624.39 | 2,772.36 |
| | --- Special Assessment # 3, 1 @ $624.39 = 624.39 | | |
| 01/22/2013 | PMT #1028. Maintenance Fee | -240.20 | 2,532.16 |
| 01/22/2013 | CREDMEM #1365. | -2,497.56 | 34.60 |
| | --- Special Assessment # 3, 4 @ $624.39 = -2,497.56 | | |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|--------------------|--------------------|----------------------|------------|
| 0.00 | 267.38 | 267.38 | 267.38 | 10,966.25 | $11,768.39 |

02/02/2016  15:41  FAX                                                                    ☐0002/0008

# Statement

Kendall Lake Towers Condo Association, Inc. 2013

15221 SW 80th Street
Suite 102
Miami, Fl. 33193

| Date |
|---|
| 2/2/2016 |

| To: |
|---|
| 21-113<br>C M G CONDO FUND LLC<br>4141 NE 2ND AVE<br>SUITE 204A<br>MIAMI, FLORIDA 33137 |

| Amount Due | Amount Enc. |
|---|---|
| $11,768.39 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 02/01/2013 | INV #781.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 274.80 |
| 02/05/2013 | INV #1663.<br>Water Fees<br>--- Water Charges, 1 @ $4.92 = 4.92 | 4.92 | 279.72 |
| 02/11/2013 | INV #806.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 304.72 |
| 03/01/2013 | INV #1187.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 544.92 |
| 03/11/2013 | INV #922.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 569.92 |
| 03/21/2013 | PMT #217. Water Fee | -5.05 | 564.87 |
| 04/01/2013 | INV #1476.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 805.07 |
| 04/09/2013 | INV #2194.<br>--- Water Charges, 1 @ $6.73 = 6.73 | 6.73 | 811.80 |
| 04/11/2013 | INV #1078.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 836.80 |
| 05/01/2013 | INV #1851.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 1,077.00 |
| 05/10/2013 | INV #2439.<br>--- Water Charges, 1 @ $1.17 = 1.17 | 1.17 | 1,078.17 |
| 05/11/2013 | INV #1282.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 1,103.17 |
| 05/14/2013 | PMT #221. Water Fees | -6.73 | 1,096.44 |
| 06/01/2013 | INV #2131.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 1,336.64 |
| 06/11/2013 | INV #1345.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 1,361.64 |
| 06/12/2013 | INV #2692.<br>--- Water Charges, 1 @ $24.95 = 24.95 | 24.95 | 1,386.59 |
| 06/15/2013 | INV #2605.<br>--- S/A 2013 Legal Fees, 1 @ $679.38 = 679.38 | 679.38 | 2,065.97 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 267.38 | 267.38 | 267.38 | 10,966.25 | $11,768.39 |

Kendall Lake Towers Condo Association, Inc. 2013

15221 SW 80th Street
Suite 102
Miami, Fl. 33193

# Statement

| Date |
|---|
| 2/2/2016 |

| To: |
|---|
| 21-113
C M G CONDO FUND LLC
4141 NE 2ND AVE
SUITE 204A
MIAMI, FLORIDA 33137 |

| Amount Due | Amount Enc. |
|---|---|
| $11,768.39 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 07/01/2013 | INV #2396.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 2,306.17 |
| 07/01/2013 | INV #96.<br>--- SMOKE DETECTOR, 1 @ $22.00 = 22.00 | 22.00 | 2,328.17 |
| 07/09/2013 | INV #2920.<br>--- Water Charges, 1 @ $9.54 = 9.54 | 9.54 | 2,337.71 |
| 07/11/2013 | INV #1423.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 2,362.71 |
| 08/01/2013 | INV #2658.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 2,602.91 |
| 08/11/2013 | INV #1538.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 2,627.91 |
| 08/15/2013 | INV #3168.<br>--- Water Charges $7.25 | 7.25 | 2,635.16 |
| 08/19/2013 | PMT #229. Water | -16.79 | 2,618.37 |
| 09/01/2013 | INV #2930.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 2,858.57 |
| 09/11/2013 | INV #1667.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 2,883.57 |
| 09/12/2013 | INV #3413.<br>--- Water Charges $6.09 | 6.09 | 2,889.66 |
| 10/01/2013 | INV #3143.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 3,129.86 |
| 10/08/2013 | PMT #233. Water Payment | -6.09 | 3,123.77 |
| 10/11/2013 | INV #1846.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 3,148.77 |
| 10/16/2013 | INV #3669.<br>--- Water Charges, 1 @ $27.18 = 27.18 | 27.18 | 3,175.95 |
| 11/01/2013 | INV #3400.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 3,416.15 |
| 11/11/2013 | INV #1960.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 3,441.15 |
| 11/15/2013 | INV #3988.<br>--- Water Charges, 1 @ $27.18 = 27.18 | 27.18 | 3,468.33 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 267.38 | 267.38 | 267.38 | 10,966.25 | $11,768.39 |

02/02/2016  15:42 FAX                                                          ✉ 0004/0008

# Statement

Kendall Lake Towers Condo Association, Inc. 2013

15221 SW 80th Street
Suite 102
Miami, Fl. 33193

| Date |
|---|
| 2/2/2016 |

| To: |
|---|
| 21-113<br>C M G CONDO FUND LLC<br>4141 NE 2ND AVE<br>SUITE 204A<br>MIAMI, FLORIDA 33137 |

| | Amount Due | Amount Enc. |
|---|---|---|
| | $11,768.39 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 12/01/2013 | INV #3659.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 3,708.53 |
| 12/11/2013 | INV #2064.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 3,733.53 |
| 12/16/2013 | INV #4242.<br>--- Water Charges, 1 @ $27.18 = 27.18 | 27.18 | 3,760.71 |
| 01/01/2014 | INV #3913.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 4,000.91 |
| 01/16/2014 | INV #4496.<br>--- Water Charges, 1 @ $27.18 = 27.18 | 27.18 | 4,028.09 |
| 01/31/2014 | INV #314.<br>--- Late Fee $25.00 | 25.00 | 4,053.09 |
| 02/01/2014 | INV #4170.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 4,293.29 |
| 02/01/2014 | INV #4751.<br>--- Water Charges, 1 @ $27.18 = 27.18 | 27.18 | 4,320.47 |
| 02/10/2014 | INV #2875.<br>--- S/A  AUDIT, 1 @ $98.68 = 98.68 | 98.68 | 4,419.15 |
| 02/11/2014 | INV #2221.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 4,444.15 |
| 03/01/2014 | INV #4426.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 4,684.35 |
| 03/01/2014 | INV #5005.<br>--- Water Charges, 1 @ $27.18 = 27.18 | 27.18 | 4,711.53 |
| 03/10/2014 | INV #3484.<br>--- S/A  AUDIT, 1 @ $98.68 = 98.68 | 98.68 | 4,810.21 |
| 03/11/2014 | INV #2276.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 4,835.21 |
| 04/01/2014 | INV #4853.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 5,075.41 |
| 04/01/2014 | INV #5259.<br>--- Water Charges, 1 @ $27.18 = 27.18 | 27.18 | 5,102.59 |
| 04/10/2014 | INV #3485.<br>--- S/A  AUDIT, 1 @ $98.68 = 98.68 | 98.68 | 5,201.27 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 267.38 | 267.38 | 267.38 | 10,966.25 | $11,768.39 |

# Statement

Kendall Lake Towers Condo Association, Inc. 2013

15221 SW 80th Street
Suite 102
Miami, Fl. 33193

| Date |
| --- |
| 2/2/2016 |

| To: |
| --- |
| 21-113<br>C M G CONDO FUND LLC<br>4141 NE 2ND AVE<br>SUITE 204A<br>MIAMI, FLORIDA 33137 |

| | Amount Due | Amount Enc. |
| --- | --- | --- |
| | $11,768.39 | |

| Date | Transaction | Amount | Balance |
| --- | --- | --- | --- |
| 04/11/2014 | INV #2384.<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 5,226.27 |
| 05/01/2014 | INV #5130.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 5,466.47 |
| 05/01/2014 | INV #5513.<br>--- Water Charges, 1 @ $27.18 = 27.18 | 27.18 | 5,493.65 |
| 05/10/2014 | INV #3486.<br>--- S/A  AUDIT, 1 @ $98.68 = 98.68 | 98.68 | 5,592.33 |
| 05/13/2014 | INV #2500.<br>--- Late Fee $25.00 | 25.00 | 5,617.33 |
| 06/01/2014 | INV #5400.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 5,857.53 |
| 06/01/2014 | INV #5767.<br>--- Water Charges, 1 @ $27.18 = 27.18 | 27.18 | 5,884.71 |
| 06/10/2014 | INV #3503.<br>--- S/A  AUDIT, 1 @ $98.68 = 98.68 | 98.68 | 5,983.39 |
| 06/11/2014 | INV #2879.<br>--- Late Fee $25.00 | 25.00 | 6,008.39 |
| 07/01/2014 | INV #5656.<br>--- Maintenance Fees, 1 @ $240.20 = 240.20 | 240.20 | 6,248.59 |
| 07/01/2014 | INV #6021.<br>--- Water Charges, 1 @ $27.18 = 27.18 | 27.18 | 6,275.77 |
| 07/10/2014 | INV #4390.<br>--- S/A  AUDIT, 1 @ $98.68 = 98.68 | 98.68 | 6,374.45 |
| 07/16/2014 | INV #2674.<br>Late Fee<br>--- Late Fee, 1 @ $25.00 = 25.00 | 25.00 | 6,399.45 |
| 08/01/2014 | INV #6278.<br>--- Water Charges $27.18 | 27.18 | 6,426.63 |
| 08/01/2014 | INV #14277.<br>--- Maintenance Fees $240.20 | 240.20 | 6,666.83 |
| 08/10/2014 | INV #4771.<br>--- S/A  AUDIT, 1 @ $98.68 = 98.68 | 98.68 | 6,765.51 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
| --- | --- | --- | --- | --- | --- |
| 0.00 | 267.38 | 267.38 | 267.38 | 10,966.25 | $11,768.39 |

# Statement

Kendall Lake Towers Condo Association, Inc. 2013

15221 SW 80th Street
Suite 102
Miami, Fl. 33193

| Date |
|------|
| 2/2/2016 |

| To: |
|-----|
| 21-113<br>C M G CONDO FUND LLC<br>4141 NE 2ND AVE<br>SUITE 204A<br>MIAMI, FLORIDA 33137 |

| | Amount Due | Amount Enc. |
|---|---|---|
| | $11,768.39 | |

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 08/11/2014 | INV #2896. | 25.00 | 6,790.51 |
| | --- Late Fee $25.00 | | |
| 08/18/2014 | PMT #251. | -27.18 | 6,763.33 |
| 09/01/2014 | INV #14535. | 240.20 | 7,003.53 |
| | --- Maintenance Fees, 1 @ $240.20 = 240.20 | | |
| 09/01/2014 | INV #6532. | 27.18 | 7,030.71 |
| | --- Water Charges $27.18 | | |
| 09/10/2014 | INV #5004. | 98.68 | 7,129.39 |
| | --- S/A AUDIT, 1 @ $98.68 = 98.68 | | |
| 09/10/2014 | PMT #254. Water | -27.18 | 7,102.21 |
| 09/11/2014 | INV #2912. | 25.00 | 7,127.21 |
| | --- Late Fee $25.00 | | |
| 10/01/2014 | INV #63. | 240.20 | 7,367.41 |
| | --- Maintenance Fees, 1 @ $240.20 = 240.20 | | |
| 10/01/2014 | INV #6786. | 27.18 | 7,394.59 |
| | --- Water Charges $27.18 | | |
| 10/10/2014 | INV #195. | 98.68 | 7,493.27 |
| | --- S/A AUDIT, 1 @ $98.68 = 98.68 | | |
| 10/15/2014 | PMT #267. | -27.14 | 7,466.13 |
| 11/01/2014 | INV #03597778. | 240.20 | 7,706.33 |
| | --- Maintenance Fees $240.20 | | |
| 11/01/2014 | INV #7042. | 27.18 | 7,733.51 |
| | --- Water Charges $27.18 | | |
| 11/10/2014 | INV #104346024. | 98.68 | 7,832.19 |
| | --- S/A AUDIT, 1 @ $98.68 = 98.68 | | |
| 11/12/2014 | PMT #256. Water | -27.22 | 7,804.97 |
| 12/01/2014 | INV #03598043. | 240.20 | 8,045.17 |
| | --- Maintenance Fees, 1 @ $240.20 = 240.20 | | |
| 12/01/2014 | INV #7297. | 27.18 | 8,072.35 |
| | --- Water Charges, 1 @ $27.18 = 27.18 | | |
| 12/01/2014 | INV #104346130. | 98.67 | 8,171.02 |
| | --- Special Assessment # 1, 1 @ $98.67 = 98.67 | | |
| 01/01/2015 | INV #7563. | 240.20 | 8,411.22 |
| | --- Maintenance Fees $240.20 | | |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|--------------------|--------------------|--------------------|-----------|
| 0.00 | 267.38 | 267.38 | 267.38 | 10,966.25 | $11,768.39 |

# Statement

Kendall Lake Towers Condo Association, Inc. 2013

15221 SW 80th Street
Suite 102
Miami, Fl. 33193

| Date |
|------|
| 2/2/2016 |

**To:**

21-113
C M G CONDO FUND LLC
4141 NE 2ND AVE
SUITE 204A
MIAMI, FLORIDA 33137

| Amount Due | Amount Enc. |
|------------|-------------|
| $11,768.39 | |

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 01/01/2015 | INV #7817. | 27.18 | 8,438.40 |
| | --- Water Charges, 1 @ $27.18 = 27.18 | | |
| 01/01/2015 | INV #8071. | 98.67 | 8,537.07 |
| | --- Special Assessment # 1, 1 @ $98.67 = 98.67 | | |
| 01/07/2015 | PMT #260. Water | -27.18 | 8,509.89 |
| 02/01/2015 | INV #3096. | 240.20 | 8,750.09 |
| | --- Maintenance Fees $240.20 | | |
| 02/01/2015 | INV #3604. | 27.18 | 8,777.27 |
| | --- Water Charges $27.18 | | |
| 02/03/2015 | PMT #263. | -27.18 | 8,750.09 |
| 03/01/2015 | INV #3350. | 240.20 | 8,990.29 |
| | --- Maintenance Fees $240.20 | | |
| 03/01/2015 | INV #3793. | 27.18 | 9,017.47 |
| | --- Water Charges $27.18 | | |
| 03/09/2015 | PMT | -27.18 | 8,990.29 |
| 04/01/2015 | PMT #270. | -27.18 | 8,963.11 |
| 04/01/2015 | INV #4054. | 240.20 | 9,203.31 |
| | --- Maintenance Fees $240.20 | | |
| 04/01/2015 | INV #4308. | 27.18 | 9,230.49 |
| | --- Water Charges $27.18 | | |
| 05/01/2015 | INV #4566. | 240.20 | 9,470.69 |
| | --- Maintenance Fees $240.20 | | |
| 05/01/2015 | INV #4820. | 27.18 | 9,497.87 |
| | --- Water Charges $27.18 | | |
| 05/01/2015 | PMT #272. | -27.18 | 9,470.69 |
| 06/01/2015 | INV #8336. | 240.20 | 9,710.89 |
| | --- Maintenance Fees $240.20 | | |
| 06/01/2015 | INV #8619. | 27.18 | 9,738.07 |
| | --- Water Charges $27.18 | | |
| 06/03/2015 | PMT #275. | -27.18 | 9,710.89 |
| 07/01/2015 | INV #8878. | 240.20 | 9,951.09 |
| | --- Maintenance Fees $240.20 | | |
| 07/01/2015 | INV #9132. | 27.18 | 9,978.27 |
| | --- Water Charges $27.18 | | |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|--------------------|--------------------|-----------------------|------------|
| 0.00 | 267.38 | 267.38 | 267.38 | 10,966.25 | $11,768.39 |

Kendall Lake Towers Condo Association, Inc. 2013

15221 SW 80th Street
Suite 102
Miami, Fl. 33193

# Statement

| Date |
|------|
| 2/2/2016 |

| To: |
|-----|
| 21-113<br>C M G CONDO FUND LLC<br>4141 NE 2ND AVE<br>SUITE 204A<br>MIAMI, FLORIDA 33137 |

| Amount Due | Amount Enc. |
|------------|-------------|
| $11,768.39 | |

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 07/06/2015 | PMT #277. | -27.18 | 9,951.09 |
| 08/01/2015 | INV #03598359. | 240.20 | 10,191.29 |
| | --- Maintenance Fees $240.20 | | |
| 08/01/2015 | INV #9397. | 27.18 | 10,218.47 |
| | --- Water Charges $27.18 | | |
| 08/06/2015 | PMT #280. | -27.18 | 10,191.29 |
| 09/01/2015 | INV #9657. | 240.20 | 10,431.49 |
| | --- Maintenance Fees $240.20 | | |
| 09/01/2015 | INV #9911. | 27.18 | 10,458.67 |
| | --- Water Charges $27.18 | | |
| 09/02/2015 | PMT #282. | -27.18 | 10,431.49 |
| 10/01/2015 | INV #03598654. | 240.20 | 10,671.69 |
| | --- Maintenance Fees $240.20 | | |
| 10/01/2015 | INV #10166. | 27.18 | 10,698.87 |
| | --- Water Charges $27.18 | | |
| 11/01/2015 | INV #03598918. | 240.20 | 10,939.07 |
| | --- Maintenance Fees $240.20 | | |
| 11/01/2015 | INV #10428. | 27.18 | 10,966.25 |
| | --- Water Charges $27.18 | | |
| 12/01/2015 | INV #03599167. | 240.20 | 11,206.45 |
| | --- Maintenance Fees $240.20 | | |
| 12/01/2015 | INV #10708. | 27.18 | 11,233.63 |
| | --- Water Charges $27.18 | | |
| 01/01/2016 | INV #03599428. | 240.20 | 11,473.83 |
| | --- Maintenance Fees $240.20 | | |
| 01/01/2016 | INV #10965. | 27.18 | 11,501.01 |
| | --- Water Charges $27.18 | | |
| 02/01/2016 | INV #03599686. | 240.20 | 11,741.21 |
| | --- Maintenance Fees $240.20 | | |
| 02/01/2016 | INV #11227. | 27.18 | 11,768.39 |
| | --- Water Charges $27.18 | | |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|--------------------|--------------------|-----------------------|------------|
| 0.00 | 267.38 | 267.38 | 267.38 | 10,966.25 | $11,768.39 |

# **EXHIBIT 2**

Affidavit of Ross Kulberg, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                      Case No. 16-12114-RAM

KENDALL LAKE TOWERS                         Chapter 11
CONDOMINIUM ASSOCIATION, INC.,

                    Debtor.
_____/

### AFFIDAVIT OF ROSS D. KULBERG, ESQ. IN OPPOSITION TO DEBTOR'S CROSS-MOTION FOR SUMMARY JUDGMENT ON *RES JUDICATA*

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

     BEFORE ME, the undersigned authority, personally appeared Ross D. Kulberg, Esq. who, after being first duly sworn, deposes and says:

     1.     Affiant was counsel of Record for Intervenors, CMG Condo Fund, LLC, CMG KLT, LLC and MELANIE SALAS ("Creditors") in the Case No. 12-39123 CA 01 (20) styled *Kendall Lake Towers Condominium Association, Inc. et al. v. Reynel Rodriguez, et al.* (the "Recall Case").

     2.     The Recall Case was a *De Novo* review of the DBPR Arbitration No. 2012-03-2055, which ordered that the Board of Kendall Lake Towers Condominium Association, Inc. (the "Debtor") be recalled.

     3.     In the Recall Case, the Honorable Judge Dresnick invalidated three special assessments that had already been passed by the Debtor and paid by the Creditors.

     4.     The Creditors then filed an Emergency Motion for Immediate Reimbursement of Special Assessment Funds on behalf of the Creditors who were all Non-Parties in the Recall

Case seeking the Honorable Dresnick to reimburse the funds already paid for the invalidated special assessments before the Association utilized such funds for expenses other than the special assessments. **Exhibit A**.

5.     On April 5, 2013, the Honorable Dresnick held a hearing on the Intervenor's Emergency Motion following his motion calendar.

6.     At the April 5, 2013 hearing, the Honorable Dresnick entered an Order denying the Motion because the Creditors did not have standing.

7.     Specifically, arguments were raised by parties opposing the Motion that the Creditors should not be reimbursed the funds because the funds were either paid by a third-party seller when the creditors purchased the units or prior to the Creditors purchase of the units.

8.     In response, the Court ruled that the Association hold the funds until the third parties had an opportunity to be served and were allowed an opportunity to claim the funds. It was this ruling that resulted in the creditors filing lawsuits against the sellers in order for the Court to later determine which party was entitled to reimbursement of the special assessments.

9.     At no time did the Court rule that the Association was entitled to keep special assessment payments which had been invalidated by the Court. That would have resulted in a windfall to the Association. Rather, the Court wanted to hear from all parties before deciding who would be reimbursed, and further ordered that the Association not reimburse the special assessment funds to anyone based upon the "standing" issue.

10.     The Debtor did not raise any objection to the reimbursement of the Special Assessments that were paid by the same party asking for a reimbursement and thus the Honorable Dresnick, at a previous hearing, ordered that those special assessments should be reimbursed.

11.    The Honorable Dresnick never found that the Creditors did not have standing at all to seek a reimbursement from the Debtor, rather, the Court did not rule on the issue without all interested parties present.

12.    Immediately after the ruling, the Creditors filed lawsuits and amended claims seeking the reimbursement of the Special Assessments from the Association and included the third-party sellers which the opposing parties argued were entitled to reimbursement.  Such cases were later transferred to Judge Dresnick as related cases to the Recall Case.

FURTHER AFFIANT SAYETH

ROSS D. KULBERG, ESQ.

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

SWORN TO and SUBSCRIBED before me this 5th day of July 2017 by ROSS D. KULBERG, ESQ., who is personally known to me or ~~has produced the following identification:~~
_____.

Notary Public, State of Florida
Commission Number/expiration

KIMBERLY A. FENICHEL
Notary Public - State of Florida
Commission # GG 106428
My Comm. Expires May 18, 2021
Bonded through National Notary Assn.